IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| W.O. GRUBB STEEL ERECTION, INC., )<br>  Plaintiff,         )<br>                )<br>  v.             )<br>                )<br>COASTAL DREDGING, LLC,  )<br>  Defendant.        )<br>                ) | Civil Action No. 3:24CV313 (RCY) |

**MEMORANDUM OPINION**

This is a negligence action stemming from Defendant Coastal Dredging, LLC's ("Coastal") alleged misuse of a crane rented from Plaintiff W.O. Grubb Steel Erection, Inc. ("W.O. Grubb"). The case is presently before the Court on Coastal's 12(b)(2) Motion to Dismiss, ECF No. 3, wherein Coastal seeks to dismiss W.O. Grubb's Complaint for want of personal jurisdiction. The Motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will deny Coastal's Motion to Dismiss.

**I. BACKGROUND**

When deciding a motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Court "must take the allegations and available evidence relating to personal jurisdiction in the light most favorable to the plaintiff." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). Unlike under Rule 12(b)(6), the Court may consider the allegations in the Complaint as well as extrinsic documents, such as "affidavits submitted by both parties." *Hawkins v. i-TV Digitalis Tavkozleski zrt.*, 935 F.3d 211, 226–27 (4th Cir. 2019). Finally, the Court must

"resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." *Id.* Applying this standard, the Court construes the relevant facts as follows.

Plaintiff is a Virginia corporation "in the business of renting and operating construction cranes and related equipment." Compl. ¶ 2, ECF No. 1-2. Defendant is a North Carolina Limited Liability Corporation. Compl. Ex. B, ECF No. 1-2 at 10–11.[1] Each of its members reside in North Carolina. Compl. Ex. A, ECF No. 1-2 at 9. Defendant has no contacts with Virginia. Aff. Jonathan Yopp ("First Yopp Aff.") ¶ 5, ECF No. 9-1. On June 20, 2023, Defendant engaged Plaintiff to provide a construction crane and operator for a dredging project in Wilmington, North Carolina. Compl. ¶¶ 8–9. Pursuant to the parties' agreement, Defendant "was responsible for connecting the crane onto the dredge," also known as "rigging." *Id.* ¶ 11. Plaintiff alleges that Defendant was negligent in rigging the dredge, causing significant damage to Plaintiff's crane. *Id.* ¶ 15.

Plaintiff asserts that the parties entered into a contract by way of the "crane ticket" signed by Jonathan Yopp, one of Defendant's members, on July 14, 2023.[2] Compl. ¶ 7; Aff. Seth Thomas ("Thomas Aff.") ¶ 23, ECF No. 8-1. Before each job commences, Plaintiff's agents present customers with a crane ticket on an electronic device such as a tablet or mobile phone. *Id.* ¶¶ 5–8. The crane ticket is "the lease agreement between W.O. Grubb and the customer for the crane. The crane ticket contains information about the job, the crane that is being rented, and the customer renting the crane." *Id.* ¶ 5. The mobile crane ticket application requires customers to input

---

[1] Because this matter was removed from state court, all attachments to the Complaint were uploaded to the electronic record as a single file, ECF No. 1-2. For ease of identification, the Court provides pin-cites to the portion of ECF No. 1-2 where the relevant exhibit may be found.

[2] Plaintiff originally attached an additional twenty-six crane tickets to its Complaint. Compl. Ex. C, ECF No. 1-2 at 12–69. Defendant attacks the veracity of these additional crane tickets, First Yopp Aff. ¶ 16, and Plaintiff does not substantiate the additional tickets in its affidavits. *See generally* Thomas Aff.; Aff. Justin Pitts ("Pitts Aff.") ECF No. 8-2. When considering a 12(b)(2) Motion to Dismiss, courts generally do not accept as true a plaintiff's unsworn assertions in the face of sworn assertions to the contrary. *See* 5B Charles Wright & Arthur Miller, *Federal Practice and Procedure*, § 1351 n.32 (4th ed. 2024) (citing *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504–05 (6th Cir. 2020)). Based on this principle, and because the presence or absence of additional crane tickets does not alter the Court's analysis *infra*, the Court only considers the crane ticket signed on July 14, 2023.

information in a particular order, or else the customer cannot complete the form. *Id.* ¶ 9. First, the customer is asked to check a box that the customer "Accepted Terms and Conditions." *Id.* ¶ 10. Above this box, a sentence appears in bold, blue lettering, which reads: "The following terms and conditions governing this rental are understood and agreed to." *Id.* ¶ 11. The referenced Terms and Conditions follow the crane ticket, and a customer may review them by scrolling down. *Id.* ¶ 12; *see generally* Thomas Aff. Ex. A, ECF No. 8-1 at 7–10. Customers can read the Terms and Conditions prior to checking the box and may view the Terms and Conditions at any point while filling out the crane ticket. Thomas Aff. ¶¶ 13, 17.

Once a customer checks the box, the crane ticket program populates the customer's name on the ticket as well as two signature lines. *Id.* ¶¶ 14–15. The first signature line immediately follows the bold, blue sentence indicating assent to the Terms and Conditions. Aff. Justin Pitts ("Pitts Aff.") Ex. A, ECF No. 8-2 at 5–11; Thomas Aff. Ex. A at 1–2.

On July 14, 2023, the day that Plaintiff rented a crane to Defendant, Seth Thomas was assigned by Plaintiff to operate the crane and oversee the completion of the crane ticket. Thomas Aff. ¶¶ 4, 20, 23. Mr. Thomas arrived at the Wilmington, North Carolina jobsite early in the morning to perform pre-lift inspections. *Id.* ¶ 25. After Mr. Thomas completed the necessary inspections, Mr. Yopp arrived and identified himself as an agent for Defendant. *Id.* ¶ 26. Mr. Thomas handed Mr. Yopp the electronic device with the crane ticket for the day open for Mr. Yopp's review. *Id.* ¶ 27. Mr. Yopp checked the box[3] accepting the Terms and Conditions and signed his name on the populated signature lines. *Id.* ¶ 30. Mr. Yopp did not ask Mr. Thomas

---

[3] Defendant vigorously contends that, when Mr. Thomas handed the device to Mr. Yopp, the box assenting to the Terms and Conditions was pre-checked. Mem. Supp. Mot. Dismiss 24. In fact, Defendant provides two affidavits by Mr. Yopp swearing to this fact. First Yopp Aff. ¶ 11, ECF No. 9-1; Aff. Jonathan Yopp ("Second Yopp Aff.") ¶ 4, ECF No. 9-2. However, Plaintiff has also provided the Court with an affidavit supporting its position that the box was unchecked at the time Mr. Thomas handed the device to Mr. Yopp. Thomas Aff. ¶ 36. Thus, for the purpose of the instant analysis, the Court must accept Plaintiff's sworn assertion as true. *Hawkins*, 935 F.3d at 226–27. Additionally, in passing, the Court notes that the crux of its analysis *infra* relies on Mr. Yopp's signature, rather than the fact of the checked box.

about the Terms and Conditions, and Mr. Yopp did not make an effort to scroll down and read the Terms and Conditions. *Id.* ¶¶ 31, 33. Mr. Thomas did not prevent or discourage Mr. Yopp from viewing the Terms and Conditions. *Id.* ¶ 31.

The Terms and Conditions to which Mr. Yopp manifested Defendant's assent contained the following forum-selection clause: "As to any disputes arising between Customer and [W.O.] Grubb, both parties agree to jurisdiction and exclusive venue in the City of Richmond, Virginia, and hereby waive any right to trial by jury, so that any such dispute shall be resolved before the court sitting without a jury." Thomas Aff. Ex. A. at 3. Copies of the July 14, 2023 crane ticket provided by both parties reveal that Mr. Yopp did, in fact, sign the ticket on both signature lines—including the line immediately below the blue, bold sentence warning readers of the Terms and Conditions. Compl. Ex. C at 14–16, ECF No. 1–2 at 12–69; Thomas Aff. Ex. A, ECF No. 8-1 at 7–10; First Yopp Aff. Ex. A, ECF No. 9-1 at 8–9.

## II. PROCEDURAL HISTORY

This matter was first filed in Richmond City Circuit Court on April 10, 2024. Compl., ECF No. 1-2. On May 1, 2024, Defendant Coastal removed the case to this Court. Not. Removal, ECF No. 1. On May 7, 2024, Coastal filed the instant Motion to Dismiss. Mot. Dismiss, ECF No. 3. On May 21, 2024, Plaintiff W.O. Grubb filed its Response in Opposition to Defendant's 12(b)(2) Motion to Dismiss ("Response"). Resp., ECF No. 8. On May 28, 2024, Defendant filed its Reply in Support of its 12(b)(2) Motion to Dismiss ("Reply"). Reply, ECF No. 9.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss a plaintiff's complaint due to a federal court's lack of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). "[W]hen the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the

4

allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). "[T]he court must construe all relevant pleading allegations in the light most favorable to [plaintiffs], assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). All factual disputes must also be resolved in the plaintiff's favor. *Mylan Lab'ys, Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993).

## IV. DISCUSSION

The exercise of personal jurisdiction over a party is lawful "if such jurisdiction is authorized by the long-arm statute of the state in which it sits and the application of the long-arm statute is consistent with the due-process clause of the Fourteenth Amendment." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). "Virginia's long-arm statute extends personal jurisdiction over nonresident defendants to the full extent permitted by the Fourteenth Amendment's Due Process Clause." *UMG Rec'gs, Inc. v. Kurbanov*, 963 F.3d 344, 350–51 (4th Cir. 2020). "Therefore, the statutory and constitutional analyses merge into one inquiry, asking 'whether the defendant has sufficient 'minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Malone v. Breggin*, 726 F. Supp. 555, 560 (W.D. Va. 2024) (citing *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945))). Alternatively, a party may consent to personal jurisdiction via a valid forum-selection clause. *Consulting Eng'rs*, 561 F. 3d at 282 n.11; *Nat'l Equip. Rental, Ltd. v. Szukhent*, 385 U.S. 311, 315–16 (1964).

Defendant argues that, because it lacks any contacts with Virginia, neither this Court nor any other court in Virginia have jurisdiction over it. *See generally* Mem. Supp. Mot. Dismiss 4–19, ECF No. 4. Plaintiff does not dispute Defendant's lack of Virginia contacts but instead

contends that Defendant agreed to litigate in Richmond, Virginia by way of the July 14, 2023 crane ticket's forum-selection clause, and thereby consented to this Court's personal jurisdiction.  Resp. 8–12 (ECF No. 8).  Thus, the dispositive issue before this Court is whether the crane ticket is an enforceable agreement between the parties to litigate solely in Richmond, Virginia.

### A. The July 14, 2023 Crane Ticket Constitutes Defendant's Contractual Consent to this Court's Jurisdiction

Defendant chiefly argues that the crane ticket cannot constitute a contract between the parties because Mr. Yopp had no knowledge of the Terms and Conditions; accordingly, Defendant argues that there was no "meeting of the minds." Mem. Supp. Mot. Dismiss 21–25.  In response, Plaintiff argues that Defendant cannot escape the effect of the crane ticket's forum-selection clause due to its representative's failure to review the Terms and Conditions.  Resp. 9–12, ECF No. 8.  The Court agrees with Plaintiff.

Under North Carolina law,[4] a valid contract exists between two parties when the parties "assent to the same thing in the same sense, and their minds meet as to all terms." *Normile v. Miller*, 326 S.E.2d 11, 15 (N.C. 1985) (quoting *Goeckel v. Stokely*, 73 S.E.2d 618, 620 (N.C. 1952)).  As a general rule, "parties are charged with knowledge of the contracts they sign." *Berkshire Life Ins. Co. Am. v. Rampersad*, 557 F. Supp. 3d 690, 701 (E.D.N.C. 2021) (citing *Goodwin v. Invs. Life Ins. Co. N. Am.*, 419 S.E.2d 766, 768–69 (N.C. 1992).  "A signed [] writing" is the best evidence of the signing party's assent to the terms contained therein.  *Park v. Merrill*

---

[4] A federal court sitting in diversity "must apply the substantive law of the forum state including its choice of law rules." *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  "Virginia is a traditional state.  As a result, '[i]t is well settled that Virginia . . . adheres to traditional conflict-of-law rules, when presented with a choice-of-law question.'" *Hatfill v. N.Y. Times Co.*, 459 F. Supp. 2d 462, 465 (E.D. Va. 2006) (quoting *Clark v. Clark*, 398 S.E.2d 82, 89 (Va. Ct. App. 1990)).  For contractual formation issues, such as issues of mutual assent, Virginia courts look to "the law of the place where made, unless the contrary appears to be the express intention of the parties." *Woodson v. Celina Mut. Ins. Co.*, 177 S.E.2d 610, 613 (Va. 1970); see also *Colgan Air.*, 507 F.3d at 275.  Because all events related to the crane ticket occurred in North Carolina, *see generally* Compl., ECF No. 1-2, the Court applies North Carolina law to determine whether the July 14, 2023 crane ticket constituted a contract.

*Lynch*, 582 S.E.2d 375, 380 (N.C. 2003). However, "[a]n exception to this general rule exists when the writing does not appear to be a contract *and* the terms are not called to the attention of the recipient." *Corpening v. MoneyLion Inc.*, 2020 WL 13882091, at *3 (W.D.N.C. Apr. 22, 2020) (internal citation omitted) (emphasis in original).

Here, Mr. Yopp undisputedly signed the July 14, 2023 crane ticket containing the forum-selection clause. Thomas Aff. ¶ 30, ECF No. 8-1; *see* First Yopp Aff. ¶¶ 11, 9. Thus, pursuant to the general rule, Mr. Yopp—and, by extension, Defendant—is charged with knowledge of the Terms and Conditions' contents, unless the crane ticket failed to adequately notify Mr. Yopp of its contractual nature. *Corpening*, 2020 WL 13882091, at *3.

As noted, a party may escape the effects of a contract where it did not know the content of the terms therein because the writing neither appeared as a contract nor called attention to the terms of the agreement. *Corpening*, 2020 WL 13882091, at *3. This exception to the general rule is typically applied in the context of clickwrap or browsewrap agreements, where a consumer might not receive adequate notice that, by using a website or clicking a link, they are entering into a contract. *See id.* ("[C]onsumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." (quoting *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014))). Nevertheless, North Carolina courts have historically affirmed the viability of such online contracts so long as (1) the "user affirmatively acknowledges and agrees to contractual terms," *Moreno v. Expedia*, 2018 WL 3059617, at *3 (W.D.N.C. June 20, 2018) (citing *Carson v. Lending Tree, LLC*, 456 F. App'x 234, 236 (4th Cir. 2011)), and (2) the profferor makes those terms available to the user, even if only by hyperlink, *see id.* (citing *Keena v. Groupon, Inc.*, 192 F. Supp. 3d 630, 636 (W.D.N.C. 2016)); *see also Bergenstock v. LegalZoom.com, Inc.*, 2015 WL 38666703, at *2, 7 (N.C. Sup. Ct. June 23, 2015) (affirming the

7

viability of an online contract where the contractual terms "were accessible by hyperlinks throughout the website").

The Court easily finds that the crane ticket notified Mr. Yopp as to its contractual nature. Firstly, the crane ticket appears far more similar to a contract than a clickwrap or browserwrap agreement might; unlike those online agreements, the crane ticket prompted Mr. Yopp to physically sign his name, thereby manifesting assent to the Terms and Conditions. Physical signatures are a hallmark of contractual assent; "[w]hen a party affixes his signature to a contract, he is manifesting his assent to the contract." *Mosely v. WAM, Inc.*, 606 S.E.2d 140, 143 (N.C. Ct. App. 2004) (quoting *Branch Banking & Tr. Co. v. Creasy*, 269 S.E.2d 117, 123 (N.C. 1980)). Thus, by its prompt for his signature, Mr. Yopp should have understood the crane ticket to be a contract. As such, the Court finds that the crane ticket adequately notified Mr. Yopp of its legal effect. *E.g.*, *Bergenstock*, 2015 WL 38666703, at *2, 7.

The Court also finds that the crane ticket adequately notified Mr. Yopp of the terms to which he assented. Indeed, immediately above the signature line, the crane ticket included the following language, set out in bold, blue text: "The terms and conditions governing this rental are understood and agreed to." Pitts Aff. Ex. A, ECF No. 8-2 at 5–11. This statement put Mr. Yopp on notice of the existence of the Terms and Conditions, which were available to him immediately below the crane ticket. *See generally* Thomas Aff. Ex. A., ECF No. 8-1 at 7–10. Notably, the crane ticket Terms and Conditions were far more available to Mr. Yopp than those hyperlinked terms historically affirmed by North Carolina courts, *e.g.*, *Moreno*, 2018 WL 3059617, at *3, since Mr. Yopp could review the Terms and Conditions without navigating to a secondary site. Pitts Aff. Ex. A. at 7. As such, the Court finds that the crane ticket adequately called attention to the Terms and Conditions therein. *See Corpening*, 2020 WL 13882091, at *3.

In an attempt to avoid this conclusion, Defendant relies on two out-of-circuit and non-North Carolina state court decisions in which contracts presented to consumers on electronic tablets were held to lack mutual assent. Mem. Supp. Mot. Dismiss 25–26 (citing Order, *Doe v. Massage Envy Franchising LLC*, No. 18CIV03706 (Cal. Sup. Ct. Oct. 19, 2020); *C.D. v. Massage Envy Franchising, LLC*, 2020 N.J. Super. Unpub. LEXIS 2382 (N.J. Sup. Ct. Dec. 3, 2020)). Neither case compels a like outcome here, because neither apply North Carolina law and both are factually distinguishable from the matter at bar.

Both cited cases considered an electronic contract between Massage Envy and consumers; there, unlike here, the contract included an unclear hyperlink to additional terms and conditions beyond those visible on the tablet presented to the consumer. Order at 7–10, *Doe*, No. 18CIV03706; *C.D.*, 2020 N.J. Super. Unpub. LEXIS 2382, at *29–30. Both reviewing courts determined that the contract did not adequately notify consumers as to the existence of the external terms, and thus, there was no mutual assent as to those terms. Order at 7–10, *Doe*, No. 18CIV03706 ("A reasonable person . . . would have no reason to click on the 'Terms of Use Agreement', because an objective understanding would be that it referenced all the stuff set forth immediately above that line"); *C.D.*, 2020 N.J. Super. Unpub. LEXIS 2382, at *29–30 ("Having scrolled through pages of somber and serious rules expressed in strong language and in bold and capitalized text throughout the 'General Consent' sections one and two, it is unfair to expect that a user would not understand her signature thereunder, and adjacent check box affirmation, to relate to those very rules and nothing else").

Here, however, Plaintiff is not attempting to unfairly enforce external terms against Defendant; rather, Plaintiff has brought this action pursuant to the very terms contained within the crane ticket signed by Mr. Yopp. And, as determined *infra*, the crane ticket adequately notified Mr. Yopp to the terms contained therein by referencing them in bold, blue letters immediately

9

above the signature line.  Pitts Aff. Ex. A, ECF No. 8-2 at 5–11; Thomas Aff. Ex. A, ECF No. 8-1 at 7–10.  Thus, the Court declines to apply the cases cited by Defendant to the instant matter.

Because the crane ticket notified Mr. Yopp of its contractual nature and called attention to its Terms and Conditions, Defendant cannot claim ignorance as to their substance, *Berkshire Life Ins. Co. Am.*, 557 F. Supp. 3d at 701, and Mr. Yopp's signature manifests Defendant's assent to those Terms—including the forum-selection clause, *Park v. Merrill Lynch*, 582 S.E.2d at 380.  Thus, the crane ticket contract constitutes Defendant's consent to personal jurisdiction in Richmond, Virginia.

**B. The Crane Ticket Contract Does Not Violate Public Policy**

Defendant next seeks to avoid the effects of the forum-selection clause by arguing that the clause is void pursuant to North Carolina law as well as public policy.  Mem. Supp. Mot. Dismiss 27.  Plaintiff disagrees and argues that the clause is not so voided.  Resp. 15–21.  The Court again agrees with Plaintiff.

1. N.C. Gen. Stat. Ann. § 22B-3

Defendant first argues that, pursuant to N.C. Gen. Stat. Ann. § 22B-3, the forum-selection clause is void on its face.  Section 22B-3 provides:

> Except as otherwise provided in this section, any provision in a contract entered into in North Carolina that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable.

N.C. Gen. Stat. Ann. § 22B-3.

Notwithstanding this statutory language, federal courts have consistently declined to void forum-selection clauses based on N.C. Gen. Stat. Ann. § 22B-3.  *Flahive v. VONQ, Inc.*, 2024 WL 4843729, at *3 (E.D.N.C. Nov. 20, 2024) (quoting *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 650 (4th Cir. 2010)).  In federal court, "[f]ederal law governs venue, and applying state law would render it 'nugatory.'"  *Id.*  Federal law embodies a strong policy favoring "enforcing

contractual forum choices." *Id.* (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)); *infra* Part IV.B.3. Based on this federal policy, federal courts may not void forum-selection clauses based on state statutes such as N.C. Gen. Stat. Ann. § 22-B3. *E.g.*, *Flahive*, 2024 WL 4843729, at *3 (considering and rejecting the applicability of N.C. Gen. Stat. Ann. § 22B-3); *Albermarle*, 628 F.3d at 650 (considering and declining to apply an analogous South Carolina statute). The Court has no reason to depart from this precedent. Thus, the Court summarily rejects Defendant's § 22B-3 argument.

### 2. The North Carolina Uniform Electronic Transactions Act

Defendant next argues that the crane ticket terms and conditions are invalidated by the North Carolina Uniform Electronic Transactions Act ("NUETA"), N.C. Gen. Stat. Ann. § 66-315 *et seq.* As a general matter, NUETA protects the validity of electronic signatures and contracts. N.C. Gen. Stat. Ann. § 66-317. However, in order for an electronic contract to receive NUETA's protection, NUETA requires the contracting parties to "agree[] to conduct transactions by electronic means" prior to entering into the contract, *id.* § 66-315(b), and Defendant argues that it never expressly agreed to transact electronically. Thus, invoking NUETA, Defendant argues that Mr. Yopp's electronic signature does not have the force of a physical signature, and therefore it cannot demonstrate Defendant's assent to the crane ticket terms and conditions, and the purported agreement is thus not sanctioned by NUETA. Mem. Supp. Mot. Dismiss 26.

Although Defendant insists that the absence of any express agreement to transact electronically voids the effect of Mr. Yopp's signature, NUETA itself provides that a party's "agreement" to so transact may be inferred by the party's conduct. Comment Four to § 66-315 specifically states:

> In this context it is essential that the parties' actions and words be broadly construed in determining whether the requisite agreement exists. Accordingly, the Act expressly provides that the party's agreement is to be found from all circumstances, including the parties' conduct. The critical element is the intent of a party to

11

conduct a transaction electronically. Once that intent is established, this Act applies.

*Id.* § 66-315 Cmt. 4. Comment Four further provides examples of conduct which would indicate an agreement to transact electronically. These examples include entering into an electronic contract, providing a potential customer with a business email address, and making an online purchase. *Id.*

The Court has already found that the parties entered into an electronic contract by way of the July 14, 2023 crane ticket. Notably, the parties did so without objection from either side as to the electronic form of the transaction. *See* Thomas Aff. ¶¶ 26–33; First Yopp Aff. ¶¶ 9, 11. Thus, under NUETA itself, the parties' conduct—i.e., Plaintiff's use and Defendant's non-objection to the electronic crane ticket—constituted an agreement to transact electronically, and NUETA does not void the crane ticket contract.

3. Public Policy

Finally, Defendant argues that N.C. Gen. Stat. Ann. § 22B-3 demonstrates that the crane ticket contract is contrary to public policy, and should be held unenforceable. Mem. Supp. Mot. Dismiss 27. However, to succeed in this argument, Defendant must overcome the presumptive validity of forum-selection clauses set out by *M/S Bremen v. Zapata Off-Shore Company* ("*Bremen*"), wherein the Supreme Court rejected the "provincial" antagonism toward such clauses. 407 U.S. at 13; *Allen v. Lloyd's of London*, 93 F.3d 923, 928 (4th Cir. 1996). This presumptive validity embodies the strong federal policy that "[t]he enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) ("A valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." (alteration in original) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)).

A litigant may overcome this presumption only upon a "clear showing" that a particular forum-selection clause is "unreasonable under the circumstances." *Allen*, 94 F.3d at 928. The Fourth Circuit has enumerated four factors district courts may consider when determining if a litigant should be allowed to avoid an otherwise valid forum-selection clause: (1) the presence of fraud; (2) if, "for all practical purposes," the complaining party will be "deprived of his day in court" due to grave inconvenience; (3) the fundamental unfairness of the contracted forum's substantive law; and (4) if enforcement of the clause would "contravene a strong public policy" of the forum state. *Id.* The Court considers each of these factors in turn.

To succeed on the first factor, Defendant "must claim that [it] was fraudulently induced to agree specifically to the forum-selection clause." *See Ross v. King's Creek Plantation, LLC*, 2015 WL 13854910, at *5 (E.D. Va. Dec. 8, 2015). Defendant has not alleged fraud of any kind by Plaintiff. *See generally* Mem. Supp. Mot. Dismiss. Thus, this factor weighs for enforcement of the clause.

As to the second factor, Defendant must show that litigating in Virginia "will be so gravely difficult and inconvenient that [it] will for all practical purposes be deprived of [its] day in court." *Bremen*, 407 U.S. at 18. Here, the only inconvenience Defendant has identified about the contracted forum is the fact that it resides in North Carolina. *See* Mot. Dismiss 2–3. Notwithstanding this one-state distance, the Supreme Court has held "that even where the forum clause establishes a *remote* forum for resolution of conflicts, the party claiming unfairness should bear a heavy burden of proof" to demonstrate such grave inconvenience. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 592 (1991) (emphasis added). For instance, in *Carnival Cruise Lines, Inc. v. Shute*, the Supreme Court determined that the sheer distance between litigants' residence in the state of Washington and the contracted forum in Florida did not violate fairness standards. *Id.* at 595. The distance between Defendant's residence and the contracted forum is far less in this

case than that in *Carnival*. Thus, as a matter of law, Defendant has failed to bear its "heavy burden," and this second factor also weighs for enforcement of the clause. *Id.*

The third factor weighs in Defendant's favor only if it can demonstrate that Virginia law is fundamentally unfair to Defendant. *See Allen*, 94 F.3d at 928. Defendant, however, makes no such argument. *See generally* Mem. Supp. Mot. Dismiss. Thus, this factor also weighs in favor of enforcing the forum-selection clause. *See Allen*, 94 F.3d at 928.

Finally, as to the fourth factor, the Court must consider whether enforcing the forum-selection clause would contravene a strong public policy of the relevant forum, i.e., the forum in which the complaining party wishes to litigate. *See Albermarle*, 628 F.3d at 646, 652 (considering the policy of South Carolina where the parties had contracted to litigate in the English High Court, but Plaintiff brought the action in South Carolina). Defendant cites again to N.C. Gen. Stat. Ann. § 22B-3 as the basis for such a "strong public policy." However, the Court must reject this argument for substantially the same reason that it rejected Defendant's statutory arguments.

The Fourth Circuit considered an argument analogous to Defendant's in *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643 (4th Cir. 2010), where the plaintiff brought suit in South Carolina despite contracting to litigate in the United Kingdom. *Id.* at 646, 652. There, like here, the party seeking to avoid the contracted-to forum argued that enforcing the forum-selection clause contravened the public policy of its desired forum, South Carolina, as manifested by a state statute similar to that in the instant matter. *Id.* at 651–52 (citing S.C. Code Ann. § 15-7-120). The Fourth Circuit rejected the plaintiff's argument and clarified that litigants may not use the four-factor exception to the presumptive validity of forum-selection clauses as a backdoor avenue to enforce state statutes contrary to federal policy:

> [I]t can hardly be a strong public policy to countermand the very policy that the Supreme Court adopted in [] *Bremen*. [] *Bremen* would have little effect if states could effectively override the decision by expressing disagreement with the decision's rationale. Classifying South Carolina's statute as manifesting a strong

14

> public policy within [] *Bremen*'s reasoning would allow the very "provincial attitude" rejected by [] *Bremen* to override the federal policy of favoring a contractual choice of forum.

*Id.* at 652.

Under this reasoning, litigants may only succeed on the fourth factor by demonstrating a specific policy of the desired forum that would be contravened by application of the forum-selection clause; they cannot succeed merely by demonstrating that the state generally opposes out-of-state forum selection, in a position contrary to overriding federal policy. *See id.* Because the Court has already determined that N.C. Gen. Stat. Ann. § 22B-3 runs contrary to federal policy, Defendant may not use it as a basis for success here. Thus, the fourth factor also weighs in favor of enforcing the forum-selection clause. And, because all of the foregoing factors weigh for enforcement, Defendant has failed to rebut the presumption of validity. Accordingly, the Court will enforce the forum-selection clause.

## V. CONCLUSION

The Court finds that Plaintiff has demonstrated a *prima facie* case that Defendant consented to personal jurisdiction in Richmond, Virginia, by virtue of the July 14, 2023 crane ticket contract. Because Defendant failed to rebut the presumptively valid forum-selection clause therein, the Court will enforce the clause. Thus, Defendant's Motion to Dismiss (ECF No. 3) will be denied. An appropriate Order shall issue.

/s/ RCY
Roderick C. Young
United States District Judge

Date: March 17, 2025
Richmond, Virginia